IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ETC NGL TRANSPORT, LLC,<br>    Plaintiff,<br><br>v.<br><br>UMB BANK & TRUST, N.A., F/K/A<br>STATE STREET BANK AND TRUST<br>COMPANY OF MISSOURI, N.A., AS<br>TRUSTEE OF THE BRIO SITE TRUST,<br>    Defendant. | Civil Action No. 4:11-cv-03503<br>JURY DEMANDED<br><br>Removed from County Court at Law No. 2,<br>Harris County, Texas, Cause No. 999836 |

### DEFENDANT UMB BANK & TRUST, N.A.'S ORIGINAL ANSWER, JURY DEMAND, AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendant UMB Bank & Trust, N.A., formerly known as State Street Bank and Trust Company of Missouri, N.A., as Trustee of the Brio Site Trust ("UMB Bank"), by and through its attorneys of record, hereby files its Original Answer to Plaintiff ETC NGL Transport, LLC's ("ETC') Original Petition in Condemnation (the "Complaint"). Defendant also files its Counterclaim against ETC, seeking declaratory judgment under the Consent Decree, as follows:

### ANSWER

1. Paragraph 1 is no longer applicable because this matter is pending in the United States District Court for the Southern District of Texas.

2. UMB Bank is without knowledge or sufficient information to form a belief as to the truth of the averment in Paragraph 2, and thus denies the averment in Paragraph 2.

3. UMB Bank admits that it is the Trustee of the Brio Site Trust, and in that capacity, is the record owner of the Clear Creek Preserve Conservation Easement (the "Conservation Easement"), situated in Harris County, Texas and as identified in Exhibit 1 to ETC's Complaint. UMB Bank also states that it may be served through its attorneys of record. UMB Bank denies the remaining allegations in Paragraph 3.

4. Paragraph 4, concerning jurisdiction and venue, is no longer applicable because this matter is pending in the United States District Court for the Southern District of Texas. As explained in UMB Bank's Notice of Removal, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441 and 1651(a).

5. The allegations in Paragraph 5 consist of legal conclusions to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies the averment in Paragraph 5.

6. UMB Bank is without knowledge or sufficient information to form a belief as to the truth of the averment in Paragraph 6, and therefore denies the allegations in Paragraph 6.

7. UMB Bank denies that a public convenience and necessity require or that it is necessary and in the public interest for ETC to enter upon, appropriate, take, acquire, hold and enjoy, by purchase or condemnation of the land, permanent easements and rights-of-way, temporary construction easements and other interests in land as are necessary for the location, construction, operation, maintenance, repair and use of a common carrier pipeline and appurtenant facilities that may be useful, necessary or convenient thereto within the Conservation Easement and denies that ETC is entitled to the requested relief. With regard to the remaining allegations in Paragraph 7, UMB Bank is without knowledge or sufficient information to form a belief as to the truth of the averment in Paragraph 7 and thus denies the remaining averments in Paragraph 7.

8. UMB Bank denies that the best selected route for ETC's pipeline crosses the Conservation Easement. UMB Bank also denies the allegations in Paragraph 8 to the extent that ETC asserts that it engaged in good faith negotiations prior to filing the Complaint, pursuant to Texas Property Code § 21.012(a) and denies that ETC is entitled to the requested relief. With

regard to the remaining allegations in Paragraph 8, UMB Bank is without knowledge or sufficient information to form a belief as to the truth of the averment in Paragraph 8 and thus denies the remaining averments in Paragraph 8.

9.   UMB Bank denies the allegations in Paragraph 9 and denies that ETC is entitled to the requested relief.

10.   The allegations in Paragraph 10 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

11.   The allegations in Paragraph 11 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

12.   The allegations in Paragraph 12 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

13.   The allegations in Paragraph 13 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

14.   The allegations in Paragraph 14 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is

required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

15. The allegations in Paragraph 15 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

16. The allegations in Paragraph 16 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

17. The allegations in Paragraph 17 consist of descriptions of ETC's requested relief and legal conclusions, to which no responsive pleading is necessary. To the extent a response is required, UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code or that ETC is entitled to the requested relief.

18. UMB Bank admits that it is the Trustee of the Brio Site Trust, and in that capacity, is the record owner of the Conservation Easement, situated in Harris County, Texas and as identified in Exhibit 1 to ETC's Complaint. UMB Bank denies the remaining allegations in Paragraph 18.

19. UMB Bank denies the allegations in Paragraph 19 and denies that ETC is entitled to the requested relief.

20. UMB Bank denies that ETC has complied with the requirements of Chapter 21 of the Texas Property Code and denies the allegations in Paragraph 20.

21. UMB Bank denies that ETC is entitled to the relief requested in Paragraph 21.

22. UMB Bank denies that ETC is entitled to the relief requested in Paragraph 22.

The unnumbered paragraph after Paragraph 22, beginning with "WHEREFORE" is a prayer for relief to which no response is required. UMB Bank denies that ETC is entitled to any of the relief sought. To the extent any future response is required, these allegations are denied.

## DEFENSES

1. The affirmative allegations stated by UMB Bank in the preceding paragraphs 1-22 are incorporated by reference and made part of these defenses.

2. The allegations of the Complaint are vague or improper.

3. The allegations of the Complaint fail to state a claim upon which relief can be granted.

4. The Complaint does not comply with the requirements of Texas Property Code §21.012 and Chapter 21 of the Texas Property Code generally.

5. ETC failed to attempt good faith negotiations prior to filing its Complaint, as required by Texas Property Code §21.012(a).

6. ETC failed to comply with the procedural requirements and conditions precedent for condemnation under Chapter 21 of the Texas Property Code.

7. ETC is not a "common carrier" entitled to condemn land under Texas Natural Resources Code § 111.002 and Texas Business Organizations Code § 2.105.

8. ETC has not and cannot show that the end use of its proposed pipeline through the Clear Creek Preserve Conservation Easement is to transport a product to or for the public for hire.

9. ETC has not and cannot show that its proposed use of an easement through the Conservation Easement is a public necessity.

10. ETC's proposal to condemn an easement through the Conservation Easement for the construction of a pipeline is disallowed under the explicit terms and conditions of Judge Vanessa Gilmore's December 16, 2005 Consent Decree Addressing Natural Resource Damages, approved and entered in *United States of America and the State of Texas v. Amoco Chemical Company, Inc.*, Cause No. 4:05-cv-03547, in the United States District Court for the Southern District of Texas. (*See* Ex. A.)

11. ETC's proposal to condemn an easement through the Conservation Easement for the construction of a pipeline is not permitted under the Conservation Easement as the explicit purpose of the Conservation Easement is to "be maintained in its natural and scenic condition in perpetuity" and "to prevent any use of the Easement Area that will (A) impair or interfere with the Conservation Values of the Easement Area or (B) frustrate or impede implementation of the RP/EAA for the Brio Superfund Site." (*See* Ex. B.)

12. ETC's proposed use of an easement through the Conservation Easement would destroy, or, at least, materially interfere with, the Conservation Easement's prior public use, as required and described by Judge Gilmore's Consent Decree in *United States of America and the State of Texas v. Amoco Chemical Company, Inc.*, Cause No. 4:05-cv-03547. Under the doctrine of prior public use, because the necessity for ETC's proposed use is not of paramount importance and because ETC can practically accomplish construction of the proposed pipeline by condemning other land that does not serve such a prior public use, ETC is not authorized to condemn an easement through the Conservation Easement.

13. UMB Bank reserves the right to seek damages for actions by ETC that constitute a taking or that damage or destroy any portion of the Conservation Easement without adequate compensation having been made.

14.     UMB Bank reserves the right to assert additional affirmative defenses in the event that discovery or other analysis indicates that additional affirmative defenses are legally warranted. UMB Bank reserves and does not waive any additional defenses that need not be pled as affirmative defenses.

## GENERAL DENIAL

15.     All allegations in ETC's Complaint, whether explicit or implicit, are denied to the extent those allegations are not expressly admitted herein.

## JURY DEMAND

16.     UMB Bank demands a trial by jury as to all issues so triable.

## COUNTERCLAIM FOR DECLARATORY RELIEF

UMB Bank, by and through its undersigned counsel, hereby brings the following counterclaim for declaratory judgment against ETC, under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202, and would show the Court as follows:

### I. JURISDICTION AND VENUE

1.      UMB Bank's Counterclaims are so related to ETC's claims in this Action as to form part of the same case or controversy, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

2.      This Court also has subject matter jurisdiction of UMB Bank's Counterclaims pursuant to the explicit terms of Judge Vanessa Gilmore's December 16, 2005 Consent Decree Addressing Natural Resource Damages, approved and entered in *United States of America and the State of Texas v. Amoco Chemical Company, Inc.*, Cause No. 4:05-cv-03547, in the United States District Court for the Southern District of Texas (the "Consent Decree"), which provides that this Court "[r]etains jurisdiction of this matter for the purpose of entering such further order, direction, or relief as may be necessary or appropriate for the construction, implementation,

resolution of disputes, or enforcement of this Consent Decree." (*See* Consent Decree at XXI, attached as Ex. A; *see also* 28 U.S.C. § 1651(a) (providing that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").)

3. A real, immediate, and justiciable controversy exists between UMB Bank and ETC with respect to ETC's proposed condemnation of an easement through the Conservation Easement, which was created pursuant to the Consent Decree. Accordingly, this Court also has subject matter jurisdiction of UMB Bank's Counterclaims pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 124(b) and 1441(a)

## II. FACTUAL BACKGROUND

### A. The Brio Site Consent Decree

5. In the late 1980s, the United States Environmental Protection Agency designated two parcels of land in southeast Harris County, Texas—the Brio Refining, Inc. Superfund Site and the Dixie Oil Processors Superfund Site—as Superfund sites under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9605 (collectively, the "Brio Site"). (*See id.* at 2.)

6. After the Brio Site was designated as a Superfund site, the United States and the State of Texas conducted a natural resource damage assessment of the Brio Site and, in 1991, initiated litigation in this Court against Potentially Responsible Parties for remediation of the Brio Site. (*See* Cause Nos. 4:91-cv-00829, 4:91-cv-00830.)

7. In 2005, the settling defendants in those lawsuits and various state and federal government agencies, including the National Oceanic and Atmospheric Administration, the United States Fish and Wildlife Service, the Texas Commission on Environmental Quality, the

Texas Parks and Wildlife Department, and the Texas General Land Office, ultimately entered into a consent decree for remediation of the Brio Site. (Ex. A.)

8. On December 16, 2005, the Honorable Vanessa Gilmore approved the parties' Consent Decree. (*See id.*) Among the many remediation requirements set forth, the Consent Decree required the settling defendants to record a parcel of land near the Brio Site to establish the Conservation Easement "in order to preserve in perpetuity the natural resources that are to be preserved or created by the Restoration Projects." (*See id.* at V.12.A.) The Consent Decree also provided that this Court "[r]etains jurisdiction of this matter for the purpose of entering such further order, direction, or relief as may be necessary or appropriate for the construction, implementation, resolution of disputes, or enforcement of this Consent Decree." (*Id.* at XXI.) The state and federal government agencies who are parties to the Consent Decree have an interest in the enforcement of both the Consent Decree and the Conservation Easement.

**B.    The Clear Creek Preserve Conservation Easement**

9. UMB Bank, as trustee of the Brio Site Trust, recorded the Conservation Easement on January 6, 2006. (*See* Conservation Easement, attached as Ex. B.)

10. The stated purpose of the recorded Conservation Easement is to "provide that the Easement Area will be maintained in its natural and scenic condition in perpetuity" and "to prevent any use of the Easement Area that will (A) impair or interfere with the Conservation Values of the Easement Area or (B) frustrate or impede implementation of the RP/EAA for the Brio Superfund Site and Dixie Oil Processors Superfund Site, Harris County, Texas, issued on May 25, 2005." (*See id.* at 2.)

11. The Conservation Easement expressly states that UMB Bank may not "carry out activities on the Easement Area or allow, through intent or negligence, the use or disturbance of the Easement Area in any manner that is inconsistent with the purposes of this Easement." (*Id.*

at 3.1.) Specifically, Attachment C to the Conservation Easement includes a list of "Prohibited Uses and Practices," including: "Agricultural, commercial or industrial activities;" "Removal of native vegetation from the Easement Area;" "Voluntary conveyance of new . . . gas, oil, chemical . . . or other utility line corridors under, in, upon or above the Easement Area;" and "Dredging, filling, excavation, and alteration of natural watercourses running on or across the Easement Area, and construction of ponds, groins or dikes."

**C.      ETC's Proposed Condemnation**

12.     On August 29, 2011, ETC filed a condemnation petition against UMB Bank in County Court at Law No. 2, in Harris County, Texas, bearing Cause No. 999836. (*See* Pl.'s Orig. Pet..) According to its Complaint, ETC seeks to acquire by eminent domain a 30' wide permanent easement and 114.8' temporary right-of-way and easement for the construction of a 20" natural gas pipeline through the Conservation Easement. (*See id.* ¶ 9 & Ex. 1.)

13.     In addition to the Proposed Easement, ETC requests "the right from time to time to cut all trees, undergrowth and remove other obstructions," and "to place any facilities and appurtenances as may required [sic.] for the Pipeline, including but not limited to pipeline markers and any such facilities and appurtenances as may be required for cathodic protection." (*See id.* ¶¶ 12-14.) ETC also seeks to acquire "all rights necessary or convenient for the enjoyment of the Subject Easement for any and all purposes not inconsistent with the purposes set forth" in its Complaint. (*See id.* ¶ 14.) Moreover, ETC's Easement and Right-of-Way Agreement, attached as Exhibit 1 to ETC's Complaint, contemplates that ETC will trench the soil to accomplish construction of the pipeline.

### III. DECLARATORY JUDGMENT

14.     UMB Bank incorporates and restates the allegations in Paragraphs 1 through 13 of its Counterclaim, as if set forth fully herein.

15. UMB Bank, as trustee of the Brio Site Trust, opposes ETC's proposed condemnation because ETC's proposed condemnation and use of an easement through the Conservation Easement threatens the Consent Decree's mandate to establish a Conservation Easement "to preserve in perpetuity the natural resources that are to be preserved or created by the Restoration Projects." (*See* Ex. A at V.12.A.)

16. Pursuant to the Conservation Easement, UMB Bank is required "to prevent any use of the Easement Area that will (A) impair or interfere with the Conservation Values of the Easement Area or (B) frustrate or impede implementation of the RP/EAA." (*See* Ex. B at 2.) Not only would ETC's 114.8' proposed easement and pipeline construction run afoul of the general environmental and conservation goals of the Consent Decree and the Conservation Easement, but ETC's intended use is explicitly prohibited pursuant to Section 3.1, which forbids "the use or disturbance of the Easement Area in any manner that is inconsistent with the purposes of this Easement," and pursuant to Attachment C. (*See id.* (specifically prohibiting "Agricultural, commercial or industrial activities;" "Removal of native vegetation from the Easement Area;" "Voluntary conveyance of new . . . gas, oil, chemical . . . or other utility line corridors under, in, upon or above the Easement Area;" and "Dredging, filling, excavation, and alteration of natural watercourses running on or across the Easement Area, and construction of ponds, groins or dikes").) Even if ETC were to propose less obtrusive methods for the initial construction of its pipeline, the mere existence of the pipeline and the need for continued maintenance would clearly impact the Conservation Easement and violate the Consent Decree.

17. Therefore, pursuant to this Court's power to enter further orders, direction, or relief as may be necessary to enforce the Consent Decree, this Court should declare and adjudge

that ETC may not acquire, by eminent domain or otherwise, any easement through the Conservation Easement for the construction of a pipeline.

WHEREFORE, UMB Bank respectfully requests that this Court:

a. Enter a declaratory judgment that ETC does not have the right to take, by eminent domain or otherwise, any interest in the Conservation Easement for the construction of a pipeline;

b. Prevent ETC's proposed condemnation of an easement through the Conservation Easement for the construction of a pipeline;

c. Award UMB Bank attorneys' fees and expenses;

d. Award UMB Bank costs of suit; and

e. Grant any such other and further relief to which UMB Bank may be justly entitled.

DATED at Houston, Texas, this the 4th day of October, 2011.

                              Respectfully submitted,

                              BAKER BOTTS L.L.P.

                              By: _____/s/_____
                                    Tynan Buthod
                                    State Bar No. 03513500
                                    S.D. Tex. Bar No. 14036
                                    Baker Botts L.L.P.
                                    One Shell Plaza
                                    910 Louisiana Street
                                    Houston, Texas 77002
                                    Telephone: (713) 229-1912
                                    Facsimile: (713) 229-2712
                                    ty.buthod@bakerbotts.com

                              ATTORNEY-IN-CHARGE FOR DEFENDANT UMB
                              BANK & TRUST, N.A., FORMERLY KNOWN AS STATE
                              STREET BANK AND TRUST COMPANY OF MISSOURI,
                              N.A., AS TRUSTEE OF THE BRIO SITE TRUST

OF COUNSEL:

Russell Lewis
State Bar No. 24036968
S.D. Tex. Bar No. 569523
Paige Goodwin
State Bar No. 24069808
S.D. Tex. Bar No. 1066399
State Bar No.
Baker Botts L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-2867

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to counsel of record by certified mail, return receipt requested, on this 4th day of October, 2011.

| | |
|---|---|
| Thomas J. Forestier | Joseph P. Regan |
| Holly Dobbs Arnold | Winstead PC |
| Matthew Z. Hawthorne | 1100 Carter Burgess Plaza |
| Winstead PC | 777 Main Street |
| 1100 JPMorgan Chase Tower | Fort Worth, Texas 76102 |
| 600 Travis Street | |
| Houston, Texas 77002 | |

/s/
Tynan Buthod